IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **RONALD MITCHELL PRICE,** | : |
| | : |
| Plaintiff, | : |
| vs. | : |
| | :     5:04-CV-313 (CAR) |
| **DR. BUSBEE, SHERIFF DONALD PEACOCK, MAJOR DAN KILGORE, OFFICER JAMES DANIEL, OFFICER PHILLIP ELLERBEE, and OFFICER ANITA ATWATER,** | : |
| | : |
| Defendants. | : |

### *ORDER ON THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

Before the Court is the United States Magistrate Judge's Recommendation [Doc.18] that the Motion for Summary Judgment [Doc. 11] by Defendants Officer Phillip Ellerbee, Officer James Daniel, Sheriff Donald Peacock, Major Dan Kilgore, and Officer Anita Atwater (collectively, "Defendants") be granted.[1]  Plaintiff filed no Objection to the Recommendation.  Having considered the matter, this Court agrees with the Recommendation and writes further to clarify the reasons for granting Defendants' Motion for Summary Judgment.

Defendants submitted the motion at bar together with affidavits in support of such motion.  Plaintiff did not respond to Defendants' motion, and has not presented the Court with any evidence other than the allegations in his complaint.

---

[1] Defendant Dr. Busbee is not a party to the Motion for Summary Judgment.

**BACKGROUND**

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed the present complaint pursuant to 42 U.S.C. § 1983. Construing Plaintiff's complaint broadly, the Court finds that Plaintiff asserts the following claims: (1) two excessive force claims alleging (a) that Officers Ellerbee and Daniel "brutally beat" him after an altercation wherein Ellerbee refused to issue Plaintiff a pair of socks the morning after his arrival at the Upson County Jail, and (b) that Deputy Kilgore threatened to use a taser gun on Plaintiff; (2) two deprivation of property claims asserting (a) that an unidentified person stole a list of names, addresses and phone numbers that belonged to Plaintiff, and (b) that Officer Atwater stole his mail; and (3) a claim that Sheriff Peacock, Deputy Kilgore, and Officer Atwater threatened and harassed Plaintiff.[2]

The allegations asserted in Plaintiff's complaint are vague and conclusory. Plaintiff states that on December 10, 2003, the morning after Plaintiff's arrest and subsequent arrival to the Upson County Jail, an altercation ensued between Officer Ellerbee and Plaintiff after Ellerbee refused to issue Plaintiff a pair of socks. Plaintiff's cursory description of the events that took place that morning indicate that as a result of Ellerbee's refusal to issue Plaintiff a pair of socks, Plaintiff accused Ellerbee of discrimination and an argument ensued. Plaintiff states that Ellerbee left, came back with Daniel, and the two officers subsequently attacked Plaintiff in front of several inmates Plaintiff identifies, causing him elbow, shoulder and back pain.

---

[2] Plaintiff also asserts that Defendant Dr. Busbee deprived Plaintiff of certain medical care. Because Dr. Busbee is not a party to the motion at bar and because Plaintiff does not allege the remaining defendants denied Plaintiff medical care, the Court will not address these claims.

Plaintiff goes on to state that after the altercation, he was taken to "the hole," and a list of witnesses (presumably witnesses of the attack on Plaintiff) was stolen from his personal belongings.  Plaintiff does not specify the Defendant(s) who took his list, but it may be presumed from the surrounding context that Plaintiff claims either Officers Ellerbee, Daniel, or Atwater stole the list.  Plaintiff further states that Officer Atwater stole his mail, but provides no other information regarding that allegation.  Finally, Plaintiff states that Sheriff Peacock, Major Kilgore, and Officer Atwater have been threatening and harassing Plaintiff since he arrived at the jail.  Plaintiff points to a specific occasion wherein Plaintiff was in handcuffs on the floor and someone, Plaintiff does not identify who, pointed a taser gun to his head and said, "we should light your ass up with these taser guns."

The Defendants' accounts of the events that took place giving rise to this action, which Plaintiff does not refute, provide the Court with a clearer picture of what occurred.  Regarding the excessive force claims against Officers Ellerbee and Daniel, Ellerbee states that in response to being refused a pair of socks, Plaintiff became disruptive, yelling and beating on the door of the pod (the open area outside the cells) where he was being held.  Ellerbee told Plaintiff to be quiet, and when Ellerbee opened the pod door, Plaintiff charged at him, crossing the security line.  Ellerbee then pushed Plaintiff back inside the pod and sought assistance from Officer Daniel.  Daniel and Ellerbee then entered the pod and told Plaintiff to pack his belongings because he was being sent to segregation.  Plaintiff refused and began yelling and cursing at the officers, refusing to cooperate and follow their instructions. The officers state that

Plaintiff grabbed at their clothing and after repeatedly telling Plaintiff to stop and to calm down, and warning Plaintiff he would be handcuffed, Daniel took Plaintiff to the ground, handcuffed him, and took Plaintiff to segregation. The officers state that Plaintiff did not appear to be hurt, and there is no evidence in the record to indicate that Plaintiff was injured as a result of this altercation.

After leaving Plaintiff in segregation, Ellerbee and Daniel returned to the pod and sorted through Plaintiff's personal items, taking the items allowed in segregation to Plaintiff and leaving the others to be stored in the property room. Deputy Atwater stated that she may have been the one who stored Plaintiff's property, but she did not steal anything, including Plaintiff's mail.

Explaining Plaintiff's claim regarding the taser gun, Deputy Kilgore stated that on a later occasion during Plaintiff's incarceration at the Upson County Jail, Plaintiff was being disruptive while in a holding cell. In an attempt to subdue Plaintiff, Kilgore took a taser gun and shone the red beam against Plaintiff's chest. As a result, Plaintiff calmed down. Kilgore states he never used the electrified beam against Plaintiff or held the taser gun to Plaintiff's head. Plaintiff filed multiple grievances in connection with the foregoing incidents which were investigated and found to be without merit.

## DISCUSSION

In any Section 1983 action, it is essential that the conduct complained of deprive Plaintiff of the rights, privileges or immunities guaranteed by the Constitution or the laws of the United States. <u>Parrat v. Taylor</u>, 451 U.S. 527, 535 (1981). For the reasons stated below, the Court finds that none of the conduct Plaintiff complains of violates Plaintiff's constitutional rights, and therefore summary judgment in favor of the

Defendants is appropriate.

*Excessive Force Claims*

As stated above, Plaintiff asserts two excessive force claims in his complaint: (1) that Officers Ellerbee and Daniel beat him after his arrival at the jail, and (2) that Deputy Kilgore threatened to use the electrified beam of a taser gun on him. Because these incidents occurred after Plaintiff's arrest but before any conviction, Plaintiff's excessive force claims are governed by the Fourteenth Amendment's Due Process Clause, which applies to excessive force claims by pretrial detainees, instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. See Cottrell v. Caldwell 85 F.3d 1480, 1490 (11th Cir. 1996). Although Plaintiff's excessive force claims are governed by the Fourteenth Amendment's Due Process Clause, the claims are analyzed under the same standard that applies to prison inmates' excessive force claims. Id. ("decisional law involving prison inmates applies equally to cases involving. . . pretrial detainees."). Under this standard, "whether or not a prison guard's application of force is actionable turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (internal quotation and citation omitted).

Applying this standard, Plaintiff's excessive force claims against Officers Ellerbee and Daniel fail. The undisputed facts submitted by Defendants, to which Plaintiff did not respond, reflect that the force applied by Ellerbee and Daniel was applied in a good faith effort to maintain and restore discipline. It was only after Plaintiff's hostile behavior began that Ellerbee entered the pod, and it was only after

Plaintiff charged at Ellerbee and crossed the security line that Ellerbee first applied force on Plaintiff, pushing him away from the pod door. When Plaintiff continued to yell, refused to cooperate, and grabbed at the officers' clothing, Daniel thought it necessary to subdue Plaintiff by taking him to the ground, handcuffing him and placing him in segregation. Throughout the encounter, the officers tried unsuccessfully to calm Plaintiff without the use of force. When force was applied, it was the amount of force necessary to get Plaintiff under control, and there is no evidence that Plaintiff sustained any injuries as a result of the officers' conduct. In light of the threat Plaintiff posed to the order of the prison and the safety of the officers, Ellerbee's and Daniel's use of force was reasonable and did not amount to a violation of Plaintiff's constitutional rights.

Plaintiff's excessive force claim against Deputy Kilgore for the threatened use of a taser gun also fails. Whether a constitutional claim regarding the threatened use of a taser gun is actionable has not yet been determined by the Eleventh Circuit. In only one case has the Eleventh Circuit addressed the possibility that the threat of the use of a taser gun may rise to the level of a constitutional violation. In Bilal v. Driver, 251 F.3d 1346, (11th Cir. 2001), an inmate alleged a violation of his constitutional rights because he was made to wear a bomb belt. Although the issue of whether a constitutional claim for threatened use of electrical shock is actionable was not the issue before the court, the Eleventh Circuit stated that "maybe . . . an excessive force claim for immediate, malicious threat of electrical shock would not be indisputably meritless." Id. at 1349 (citing Parker v. Asher, 701 F. Supp. 192, 195 (D. Nev. 1988)). In its discussion of the Nevada case, the court pointed out that the Nevada district court limited its holding to

situations where the threatened use of the taser gun was for the "malicious purpose of inflicting gratuitous fear." Id.

It is clear based on the evidence in the case before this Court that Deputy Kilgore's threatened use of the taser gun was not for the "malicious purpose of inflicting gratuitous fear" in Plaintiff. On the contrary, Kilgore threatened to use the taser gun because of Plaintiff's disruptive behavior in a holding cell. The threat was used in a good faith attempt to restore discipline, which, in fact, it did do, as Plaintiff calmed down as a result of Kilgore's threat. Thus, even assuming Plaintiff would have a constitutional claim of excessive force for Kilgore's threatened use of the taser gun, and such an assumption is certainly not clear,[3] such claim would fail under these circumstances as there is no violation of Plaintiff's constitutional rights.

*Deprivation of Property*

In his complaint, Plaintiff asserts two deprivation of property claims: (1) that someone stole a list with certain phone numbers and addresses when Plaintiff was sent to segregation, and (2) that Deputy Atwater stole Plaintiff's personal mail. As stated earlier, although Plaintiff does not specifically identify who stole his list of witnesses, the Court construes this claim to be against Officers Ellerbee, Daniel, and Atwater.

A prisoner's claim for deprivation of his property does not amount to a violation of due process under the United States Constitution if the following two circumstances are present: (1) the deprivation of property resulted from an intentional, non-negligent

---

[3] In Bilal, the Eleventh Circuit also cites a 9th Circuit case which held that there was no unconstitutional use of a taser gun where the plaintiff only complained of its threatened use. 251 F.3d at 1349 (citing Michenfelder v. Sumner, 860 F.2d 328 (9th Cir. 1988)).

act of a state employee that is random and unauthorized, rather than pursuant to an established state procedure; and (2) the state provides an adequate post-deprivation property remedy for the prisoner's property loss. Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194 (1984). The reasoning behind this principle is that if an employee's action is unauthorized, the state cannot predict when it will occur and thus is unable to provide a pre-deprivation due process hearing.

Plaintiff does not claim that Officers Ellerbee, Daniel, or Atwater acted pursuant to officially authorized procedure. Hence, Plaintiff's claims can only be construed as alleging an intentional, random, and unauthorized act.[4] Additionally, the State of Georgia provides adequate post-deprivation remedies whereby Plaintiff may sue Defendants in the state courts and recover any damages due him for the loss of his property. See O.C.G.A. § 51-10-1. Such a cause of action is not foreclosed by the statute of limitations. See O.C.G.A. § 9-3-32 (four year statute of limitations on actions for the recovery for personal property). Thus, Plaintiff has failed to allege a violation of his due process rights under the Fourteenth Amendment.

*Threats and Harassment*

Plaintiff's allegations that Sheriff Peacock, Deputy Kilgore, and Officer Atwater harassed and threatened him also fail. Plaintiff only points to the taser gun incident as illustrative of the supposed threats and harassments. As explained above, even if Officer Kilgore's threat to use the taser gun's electrified beam on Plaintiff is actionable

---

[4] If Plaintiff is claiming that officials negligently lost his property, he has failed to state a constitutional claim. Mere negligence by prison officials may state a claim under state law, but is insufficient to establish a constitutional violation. Daniels v. Williams, 474 U.S. 327, 333 (1986).

as a constitutional violation, such claim fails. Plaintiff provides no explanation of any other threats or harassment. Officer Atwater and Sheriff Peacock specifically state they never harassed Plaintiff. Furthermore, Sheriff Peacock asserts that he had no interaction with Plaintiff the entire time Plaintiff was incarcerated at the Upson County Jail.

Even if Plaintiff's claims that Peacock and Atwater threatened and harassed him were true, Plaintiff's allegations against Peacock and Atwater are not cognizable under § 1983. As a rule, "mere threatening language and gestures of a custodial office do not, even if true, amount to constitutional violations." Shiftlet v. Cornell, 933 F. Supp. 1549, 1556 (M.D. Fla. 1996) ("Were a prisoner . . . entitled to a jury trial each time that he was threatened with violence by a prison guard, even though no injury resulted, the federal courts would be more burdened than ever with trials of prisoner suits.") (quoting McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983)).

## CONCLUSION

The Recommendation of the Magistrate Judge is therefore **ADOPTED** and **MADE THE ORDER OF THE COURT**; the Motion for Summary Judgment submitted by Defendants Officer Phillip Ellerbee, Officer James Daniel, Sheriff Donald Peacock, Major Dan Kilgore, and Officer Anita Atwater is **GRANTED**.

**SO ORDERED**, this 21st day of February, 2006.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

SSH/aeg